## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER WALTON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY <br><br> Defendant. | Civil Action No. 14-1123 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Alexander Walton ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") William Musseman upholding the final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). After reviewing the submissions of both parties, the arguments presented at the June 2, 2015 hearing, and for the following reasons, the final decision of the Commissioner is hereby **affirmed.**

## I.   BACKGROUND[1]

### A.   Procedural History

Plaintiff filed an application for Social Security Disability and Social Security Insurance benefits, alleging disability since February 16, 2012. (Pl. Br. at 1). Plaintiff's claim for benefits was initially denied on July 24, 2012. (R. at 11). He subsequently filed a hearing request and on January 17, 2013 a hearing was held before the ALJ. Id. At the hearing, the ALJ determined that, based on Plaintiff's RFC and the testimony of Vocational Expert ("VE") Dennis Duffin,

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective moving papers and the transcript of the record.

there were a significant number of jobs in the national economy that Plaintiff could perform and that therefore Plaintiff was not disabled. Id. The Appeals Council denied Plaintiff's request for review of the ALJ decision on December 18, 2013. (R. at 1). Plaintiff then filed a Local Rule 9.2 brief in this Court contesting the ALJ's decision. (Pl. Br. at 2).

 B. Factual History

  1. Plaintiff's Background

Plaintiff alleges disability due to pain in his right hip, his right and left knees, a heart murmur, anxiety and depression. (Pl. Br. at 2). Plaintiff is currently thirty years old and has a GED and vocational training in carpentry. (Def. Br. at 2). He has worked as a military supply clerk, a janitor, and a construction laborer. Id. at 3. He was enlisted in the US Army from July 2010 through October 26, 2012. Id. at 3.

  1. Medical Evidence

Plaintiff's history of bilateral knee pain dates back to 2008. Id. He has undergone various treatments, including usage of cream, pulse radiofrequency, and physical therapy, none of which have proved very successful. Id. Although MRIs in March 2012 revealed a small tear in his right discoid meniscus and associated possible posterior parameniscal cyst, x-rays in April 2012 revealed "normal knees" with no evidence of fracture, dislocation, joint effusion, significant arthritic change, or other abnormality. Id. at 4. Furthermore, Plaintiff demonstrated normal coordination and motor strength during physical examinations, although he did have an abnormal gait and stance. Id. at 4. He was diagnosed with bilateral patellofemoral syndrome in 2011, which affected high-impact and weight-bearing activities, but not his daily activities. Id. Plaintiff has also received treatment for bilateral foot and plantar fasciitis pain, and ingrown toenails. Id. However, he denied the need for surgery or use of an assistive device, shoe inserts,

or orthotics. Id. at 5. The U.S. Army Physical Evaluation Board issued a formal decision finding that Plaintiff had a 20% disability due to his chronic bilateral patellar tendinitis/tendinopathy but his other medical conditions, including his foot problems, met medical retention standards. Id. at 5.

Plaintiff also alleges mental health impairment. Id. at 6. However, medical examiners differed in their opinions of Plaintiff's mental functioning. The U.S. Physical Evaluation Board, based on the findings of Army psychiatrist Brian Butler, M.D., found that Plaintiff's adjustment disorder with depressed mood met medical retention standards. Id. at 7. Daniel Pitzer, a licensed clinical social worker who completed an RFC assessment on Plaintiff's behalf, found that Plaintiff had marked limited in several categories of mental work-related functioning. Id. at 7. Meanwhile, state agency mental health consultant James Wanstrath, Ph.D., reviewed the record and found that Plaintiff, at most, had moderate limitations in some mental work-related functioning. Id. at 7-8. Dr. Victor Neufeld, following a consultative psychological evaluation ordered by the state agency, found that Plaintiff was moderately impaired in understanding and recalling instructions, markedly impaired in social interaction, and mildly to moderately impaired with respect to persistence and pace. Id. at 8. Dr. Brad Marten, in another consultative psychological examination, found that, overall, Plaintiff exhibited a stable level of psychosocial functioning, with the ability to attend to simple instructions and directions in a work setting. Id. at 8.

Plaintiff himself told his counselor at Evans Army Community Hospital between June 2011 and April 2012 that he continued to walk despite his pain since he did not have a car, that he planned to go to the gym on his days off, that he had a close friend since he was a kid, that he planned to go to college, that he talked to and had the support of his mother, that he spent the

holidays relaxing with friends, and that he had a girlfriend and that he was looking forward to a trip to California to visit her family. Id. at 6.

C. VE's Testimony

The ALJ first asked the VE to assume a hypothetical individual with Plaintiff's age and educational background, limited to light exertional level with a sit-stand option, occasional squatting and kneeling, no ladders or scaffolds, no foot or leg controls, occasional dealing with the general public on a face to face basis and no complex tasks, defined as a Specific Vocational Preparation (SVP) level of 2 or less. (R. at 46). The VE testified that an individual with those limitations would be able to work as a survey worker or scale attendant, both jobs with skill levels of 2 and light occupations or a call out operator, also skill level 2, but a sedentary occupation. (R. at 46-47). The VE also testified that the jobs were generally compatible with their descriptions in the DOT. (R. at 47).

In the second hypothetical the ALJ asked the VE to assume the same restrictions as the first hypothetical with additional modifications: a less than occasional ability to perform work activities within a schedule, maintain regular attendance and be punctual; less than occasional ability to sustain ordinary routine, without special supervision; less than occasional ability to work in coordination with or proximity to others; less than occasional ability to make simple work-related decisions; and a less than occasional ability to get along with co-workers or peers, without distracting them or exhibiting behavioral extremes. (R. at 47). The VE testified that an individual who possessed the limitations of the second hypothetical was not compatible with any competitive employment. Id.

Finally, in response to questioning by Plaintiff's attorney, the VE also testified that the sit-stand option, included as a limitation in the ALJ's hypotheticals, was not defined by the DOT

and the methodology he and his associates used to determine whether the jobs had a sit-stand option was observation, work evaluations, and site evaluations. (R. at 48).

## II. STANDARD OF REVIEW

The standard of review for this Court is whether the ALJ's decision is based on substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Although the Social Security Act is a remedial statute that should be broadly construed, the "substantial evidence" standard is a deferential one and the ALJ's decision must be affirmed if supported by "more than a mere scintilla . . . . but less than a preponderance." See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); Woody v. Sec'y of Health & Human Servs., 859 F.2d 115, 1159 (3d Cir. 1988). Substantial evidence includes objective medical facts, diagnoses or medical opinions based on those facts, subjective evidence obtained or disability testified to by the claimant, and the claimant's age, education and work experience. Curtin v. Harris, 508 F. Supp. 791 (D.N.J. 1981). The ALJ must specifically indicate why particular evidence was rejected. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

The Social Security Administration has developed a five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant is engaged in any "substantial gainful activity," whether he suffers from a severe impairment, and whether the impairment meets or medically equals the severity of a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) - (iii), 404.1520 (d). If the impairment meets or medically equals the severity of a listed impairment then the claimant automatically qualifies for disability benefits. 20 C.F.R. §§ 404.1520 (a)(4)(iii), 404.1520 (d). If not, the ALJ must

determine the claimant's RFC and evaluate whether the claimant can return to his past relevant work or perform any other work present in significant numbers in the national economy.

## IV.  DISCUSSION

Plaintiff argues that the ALJ improperly evaluated the medical record, undermining the severity of Plaintiff's impairments and credibility, therefore resulting in an improper calculation of Plaintiff's RFC at step four. Consequently, Plaintiff further argues that at step four the ALJ erred by failing to include all of Plaintiff's limitations in the hypothetical posed to the VE and that the ALJ erred in his conclusion that Plaintiff can perform work in the national economy, as per step five. 20 C.F.R. § 404.1520(a)(4)(iv), 404.1520(a)(4)(v).

### I.   THE ALJ'S DETERMINATION THAT PLAINTIFF RETAINS THE FUNCTIONAL CAPACITY TO PERFORM LIGHT WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The RFC is an administrative finding that the ALJ is solely responsible for determining, based on consideration of the record as a whole. 20 C.F.R. § 404.1527(e). In determining a claimant's RFC, the ALJ must consider all medically determinable impairments, whether severe or non-severe. Slaughter v. Astrue, 2008 U.S. Dist. LEXIS 16954, *14 (D.N.J. Mar. 3, 2008). Furthermore, the ALJ retains the discretion to make a credibility judgment, "determining the extent to which a claimant is accurately stating the degree of pain or the extent to which he is disabled by it." Id., citing Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999). A subjective complaint alone cannot establish disability; objective medical evidence must be provided. 20 C.F.R. § 404.1529(a). In the case of conflicting evidence, the ALJ may reject a claim if he provides "explanation" for the rejection. Slaughter, 2008 U.S. Dist. LEXIS 16594, at *14.

In this case, the ALJ determined that Plaintiff's bilateral knee impairment would limit him to a light range of work light with occasional squatting, kneeling, no climbing of ladders or

scaffolds, no operation of foot or leg controls, and a sit/stand option. (R. at 26). The ALJ also determined that the claimant's mental impairments would restrict the claimant to work involving no complex tasks, a SVP level of 3 or less, with only occasional interaction with the general public. Id. While the ALJ considered the record as a whole, he rejected several of the Plaintiff's alleged limitations because he did not find them to be credible when viewed against the backdrop of the medical evidence. Id.

### A. The ALJ's determination that Plaintiff's claim of extensive bilateral knee pain was not credible in light of the record is supported by substantial evidence.

The ALJ provided extensive reasoning as to why he did not find Plaintiff's claim of extensive bilateral knee pain to be credible. (R. at 20). The ALJ closely examined the objective evidence and failed to find a compelling basis for Plaintiff's pain complaints because record failed to demonstrate that the knee pain precludes Plaintiff from all work in the national economy. Id. For example, although the ALJ conceded that MRIs showed small tears and Plaintiff walks with a cane, he pointed to the fact that in May 2011, bilateral knee x-rays were negative and in April 202, bilateral knee x-rays revealed "normal knees" with adequately maintained joint space and no evidence of fracture, dislocation, joint effusion, significant arthritic change, or other abnormality. (R. at 19-21). Furthermore, Plaintiff's daily activities were not consistent with the limited abilities that he alleged, noting for example, that Plaintiff reported playing basketball for 60-90 minutes. (R. at 20). The ALJ also pointed to the facts that Plaintiff was able to sit in a military vehicle for at least twelve hours per day, that he continued to walk, and that he planned to go to the gym on his day off. Id. These activities were determined by the ALJ to sufficiently demonstrate that Plaintiff's pain was not disabling. (R. at 20-24).

The ALJ also explained that Plaintiff had only received routine and conservative treatment for his knee pain. Plaintiff cited to the Third Circuit case Sykes v. Apfel, where the

Third Circuit remanded the ALJ decision because the <u>only</u> explanation for the conclusion that the evidence did not support the claimant's allegation was that the claimant had only received conservative treatment. <u>Sykes v. Apfel</u>, 228 F.3d 259, 266 n.9 (3d Cir. 2000). However, <u>Sykes</u> is distinguishable. In this case, the ALJ noted other medical evidence <u>in addition</u> to the fact that Plaintiff received routine and conservative treatment, as discussed above.

While Plaintiff also disagrees with the ALJ's finding that he is capable of jobs that involve occasional squatting or kneeling, he presents no objective medical evidence that specifically states that he cannot squat or kneel. In the absence of objective medical evidence, the ALJ is not required to accept Plaintiff's subjective claims. The ALJ also found this contrary to the fact that Plaintiff was able to undergo highly intensive training during basic training for the U.S. Army despite knee pains. (R. at 20). Furthermore, the ALJ cited evidence that Plaintiff was inconsistent between his pain complaints and presentation. <u>Id.</u> For example, physical therapy notes showed improved of Plaintiff's symptoms although Plaintiff reported that physical therapy was not helpful. <u>Id.</u> Therefore, the ALJ provided substantial evidence for his conclusion that that Plaintiff's claim of extensive bilateral knee pain was not credible.

    B.    <u>The ALJ provided substantial evidence as to why he did not award weight to the findings of certain medical professionals and other agencies.</u>

The ALJ assigned little weight to the opinion of consultative examiner Dr. Neufeld and no weight to the opinion of licenses clinical social worker Daniel Pitzer using the 20 C.F.R. 404.1527(c) factors. (R. at 16-18). Objective factors to consider in determining how to weigh evidence from medical professional include (1) the examining relationship, (2) the treatment relationship, including length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving treatment. 20 C.F.R. 404.1527(c).

First, although the ALJ noted that Daniel Pitzer treated Plaintiff, he only treated Plaintiff for a month and provided no treatment notes or explanation for his conclusions regarding Plaintiff's mental functioning. (R. at 25). Furthermore, he was a licensed clinical social worker and therefore not an "acceptable medical source" per 20 C.F.R. § 404.1513(a). Id. Second, the ALJ awarded little weight to the findings of Dr. Neufeld, because he treated Plaintiff only once, failed to cite records specifically, and relied heavily on Plaintiff's subjective reports, which he admitted were inconsistent and to the findings of the military evaluation board, because they did not address Plaintiff's limitations as a civilian. (R. at 22, 24).

Additionally, the ALJ considered the findings of the VA disability determination, but found that they were heavily based on subjective claims of Plaintiff and therefore accorded them little to no weight. (R. at 25-26). Furthermore, ultimately the findings of other agencies are not binding on the ALJ. 20 CFR § 404.1527(e)(2)(i). Accordingly, the ALJ provided substantial evidence as to why he did not award great weight to Plaintiff's claims of mental impairment because he provided specific reasoning in accord with the regulations.

C. <u>The ALJ gave proper consideration to Plaintiff's foot problems in determining his RFC.</u>

Contrary to Plaintiff's assertion, ALJ properly considered Plaintiff's plantar fasciitis and bilateral ples planus in determining his RFC. First, the ALJ specifically limited Plaintiff's range of work to not include foot or leg controls. (R. at 26). Second, the ALJ pointed to the fact that Plaintiff only sought routine and conservative treatment for his foot pains, and that U.S Army doctors found that Plaintiff's foot impairments met medical retention standards. (Def. Br. at 5). Moreover, as discussed above, the record demonstrates that Plaintiff was still able to engage in daily activities and his own testimony suggests that weakness in his ability to walk was due to

pain in his knees not to his foot problems. (R. at 38-44). Accordingly, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

## II. THE ALJ'S DETERMINATION THAT PLAINTIFF COULD PERFORM A LIGHT AND SEDENTARY JOB EXISTING IN THE NATIONAL ECONOMY IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Step five of the sequential evaluation process requires that the ALJ consider Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational guidelines, and consultation with the VE to determine whether there are a significant number of jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1566(a). A VE or other specialist may be employed in determining whether there exists a specific occupation for the claimant's work skills. 20 C.F.R. § 404.1566(e). The VE is not required to provide anything other than his own experience and knowledge when providing his testimony. See 2000 SSR LEXIS 8, *2. However, a vocational expert's testimony must be based upon a hypothetical that "accurately portrays the claimant's individual physical and mental impairments" that are medically established. Podedworny v. Harris, 745 F.2d 201, 218 (3d Cir. 1984).

In this case, the ALJ properly utilized the expertise of a VE to determine whether or not there were any jobs in the national economy that Plaintiff could occupy, due to the complexity of his additional limitations. The ALJ's first hypothetical to the VE included the limitations of a light exertional level with a sit-stand option, occasional squatting and kneeling, no ladders or scaffolds, no foot or leg controls, occasional dealing with the general public on a face to face basis and no complex tasks (SVP of 2 or less). (R. at 46). In response, the VE testified that an individual with those limitations would be able to work as a survey worker, scale attendant or call-out operator. (R. at 46-47). The ALJ's second hypothetical imposed additional limitations including a less than occasional ability to perform work activities within a schedule, work with

others and make work-related decisions. (R. at 47). The VE testified that such an individual could not perform any competitive employment. Id. However, only the first hypothetical accurately portrayed Plaintiff' impairments because, as discussed above, Plaintiff's extensive claims of mental impairments and markedly impaired social interaction were not found credible in determining Plaintiff's RFC. Consequently, Plaintiff's claims were not medically established and therefore the ALJ did not need to consider the VE's answer to his second hypothetical in his final determination.

Furthermore, the Social Security Agency ("Agency") may take into account administrative notice of job data from publications such as the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. § 404.1566(d). The Commissioner uses SVP levels to define the level of skill required by an occupation. SSR 00-4p, 2000 SSR LEXIS 8, *2; 20 C.F.R. § 404.1560. Plaintiff is correct in his assertion that the job "scale attendant" does not exist in the DOT as a specific occupation, however C.F.R. §404.1566(b) only requires that there be a significant number of jobs in one or more occupation. The VE's recommendations of survey worker and call out operator, both of which are listed in the DOT, only require a SVP level of 2 and the ALJ determined that the Plaintiff's SVP level was a 3 as part of his RFC. (R. at 26). There is substantial evidence to support the ALJ's determination of Plaintiff's SVP. Specifically, the ALJ accorded some weight to the findings of Dr. Wanstrath, the State agency psychological consultant, who determined that the Plaintiff was capable of work of limited complexity but which requires accuracy and attention to detail. (R. at 24). The ALJ also noted that Dr. Wanstrath found that Plaintiff could not work closely with supervisors and co-workers, but could accept supervision and relate to co-workers and the general public if contact is not frequent or prolonged. Id.

Finally, as there was no actual conflict with the DOT and both parties considered the VE a qualified expert at the time of the administrative hearing, the VE's opinion did not need to be supported by any additional scientific methodology, contrary to Plaintiff's assertion. Accordingly, the VE's testimony provided substantial evidence that the ALJ relied upon in making his determination that the Plaintiff could perform a significant number of jobs in the national economy. Therefore, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

## V.   CONCLUSION

For the foregoing reasons, the decisions of the Commissioner are **affirmed**. An appropriate order accompanies this Opinion.

DATED: 8 of June, 2015.

JOSE L. LINARES
U.S. DISTRICT JUDGE